IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID SANDOVAL,

    Plaintiff,

No. CIV S-07-1201 DAD

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

ORDER

    Defendant.

_____/

    This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is affirmed.

**PROCEDURAL BACKGROUND**

    On August 16, 2004, plaintiff David Joseph Sandoval, then age 27, applied for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act). (Transcript (Tr.) at 59.) Plaintiff alleged that he had suffered from anxiety since 1989 but became disabled by his inability to cope with people on August 28, 2003. (Tr. at 60, 66.) The Commissioner denied plaintiff's application initially on February 15, 2005, and upon reconsideration on June 6, 2005. (Tr. at 39-53.) On September 21, 2006, a hearing was held

before an administrative law judge (ALJ), at which time plaintiff was represented by counsel. (Tr. at 245-69.)

In a decision issued on February 6, 2007, the ALJ determined that plaintiff was not disabled. (Tr. at 21-33.) The following findings were entered:

1. The claimant has not engaged in substantial gainful activity since August 28, 2003, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: antisocial personality disorder, depressive disorder and borderline intellectual functioning (20 CFR 416.920(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for work at all exertional levels, reduced by mental limitations that limit the claimant to work involving no more than simple and repetitive instructions and no frequent contact with supervisors, coworkers and/or the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on February 17, 1977 and is currently 29 years old, which is defined as a younger individual age 18-44 (20 CFR 416.963).

7. The claimant has a marginal education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Based on Social Security Rulings 83-10, 83-14 and 85-15, and the claimant's age, education, work experience, and residual functional capacity as described above, the claimant is able to make a successful adjustment to work that exists in significant numbers in the national economy; a

|   |     | finding of "not disabled" is therefore reached under the framework of Rule 204.00 of the Medical Vocational Guidelines, Appendix [sic] 2, Subpart P, Regulations No. 4 (20 CFR 416.960(c) and 416.966). |
|---|-----|---|
|   | 10. | The claimant has not been under a "disability," as defined in the Social Security Act, since August 16, 2004, the date the application was filed (20 CFR 416.920(g). |

(Tr. at 24-32.)

On May 14, 2007, the Appeals Council denied plaintiff's request for review of the decision. (Tr. at 10-12, 15.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on June 19, 2007. On July 26, 2007, the Appeals Council set aside its initial denial of review in order to consider a medical source statement dated April 26, 2007 but not submitted to the Appeals Council until May 17, 2007. (Tr. at 5-6.) Upon considering that new medical source statement, the Appeals Council denied review a second time. (Id.)

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d

at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff seeks summary judgment on the ground that the ALJ erred by failing to take into account the opinions of some of his treating doctors with respect to post-traumatic stress disorder, borderline intellectual functioning, and depression with psychotic features. Plaintiff indicates that the treating doctors whose opinions were not taken into account are Betty Phillips, Ph.D., Judy Adler, MFTI,[1] and Robert Hunt, all of Yolo County Mental Health, and Anne Thurston, LCSW, of the California Department of Corrections Parole Clinic. Plaintiff contends that proper consideration of the records of these treating doctors would have led to a determination that plaintiff is disabled under the Act. The court addresses this argument below.

It is well-established that the medical opinion of a treating physician is entitled to special weight. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Of course, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The court finds that the ALJ did not fail to take into account the opinions and any associated treatment records of medical sources Thurston, Moore, Phillips, and Hunt with respect to plaintiff's post-traumatic stress disorder, borderline intellectual functioning, and depression

---

[1] Plaintiff appears to be referring to Judy Adler Moore, MFTI. (See tr. at 238.)

5

with psychotic features. Before addressing the specified opinions and records, however, the court notes that plaintiff was in the custody of the California Department of Corrections from February 17, 2004 to August 4, 2004, immediately prior to filing his application for SSI on August 16, 2004. (Transcript (Tr.) at 59, 141-76.)

Plaintiff was confined for six weeks at Deuel Vocational Institution, where he was screened, interviewed by a psychologist, and prescribed medication for adjustment disorder. (Tr. at 157-76.) He was transferred to Mule Creek State Prison on April 2, 2004 and remained there until he was paroled on August 4, 2004. At Mule Creek State Prison, plaintiff was screened, met with an interdisciplinary mental health treatment team within a week of arrival, was prescribed medication, saw a psychiatric social worker twice in April 2004 for follow up, and was seen in June 2004 by a psychiatrist who found that the prescribed medications were "beginning to be effective." (Tr. at 141-56.) Over the course of his six months in the two institutions, plaintiff reported depression, history of attention deficit disorder and dyslexia, history of substance abuse (alcohol, marijuana, methamphetamine), and anxiety. Plaintiff was diagnosed with adjustment disorder with depressed mood, substance dependence, antisocial personality disorder, depressive disorder, and cannabis dependence. The court finds no mention of post-traumatic stress disorder,[2] and psychosis is mentioned only in the treatment notes of a psychologist on February 27, 2004, and March 26, 2004, and in the treatment notes of a psychiatrist on April 8, 2004, finding plaintiff negative for psychosis or psychotic process. (Tr. at 147, 161, 167).

On October 28, 2004, Anne Thurston, LCSW, evaluated plaintiff at the California Department of Corrections Parole Outpatient Clinic. (Tr. at 189-91.) As of December 8, 2004, the Clinic's existing records for plaintiff consisted solely of LCSW Thurston's evaluation. (Tr. at 188.) It does not appear that any Clinic treatment notes were submitted at a later time. (Tr. at

---

[2] During his first meeting with his interdisciplinary treatment team at Mule Creek State Prison on April 8, 2004, plaintiff reported as part of his medical history that he suffered head trauma when he was hit with a machete and a gun and stabbed during a home invasion. (Tr. at 152.)

6

2-4.) Thus, LCSW Thurston's initial evaluation is not supported by any treatment notes. The ALJ summarized that evaluation as follows:

> In an initial mental health evaluation following [the claimant's] parole in October 2004, Anne Thurston, LCSW, reported that the claimant had been treated while in prison for suicidal thoughts and visual hallucinations with Paxil for the past year (Exhibit 3F/2 [tr. at 189]). LCSW Thurston noted that the claimant was currently taking Paxil and Vistaril and acknowledged that he had been drug free [sic] for about two months since August (Exhibit 3F/3 [tr. at 190]). Prior to that, the claimant admitted to a very long list of substance abuse with various drugs and illicit substances, including alcohol, marijuana and methamphetamines (Exhibit 3F/2-3 [tr. at 189-90]). Upon examination, LCSW Thurston diagnosed the claimant with depressive disorder with psychotic features, and amphetamine and alcohol dependence, currently in remission, at Axis I, borderline intellectual functioning at Axis II, and a GAF score of 50 at Axis V (Exhibit 3F/3 [tr. at 190]).

(Tr. at 26.) With respect to the diagnosis of depressive disorder with psychotic features, the ALJ noted that Barry Finkel, Ph.D., who performed a psychological evaluation of plaintiff in December 2004, reviewed LCSW Thurston's evaluation and observed that it "does not indicate any gross psychotic features." (Id.) LCSW Thurston did not diagnose post-traumatic stress disorder.

The court finds that the ALJ did not fail to take into account LCSW Thurston's evaluation. At step two of the sequential evaluation process, the ALJ determined that plaintiff had the severe impairments of antisocial personality disorder, depressive disorder, and borderline intellectual functioning. (Tr. at 24.) In other words, the ALJ adopted LCSW Thurston's diagnoses with the exception of the assessment that plaintiff's depressive disorder included psychotic features. The ALJ found that the assessment of psychotic features was not supported by the record. He noted conflicting diagnoses of malingering, rule out malingering, rule out psychotic disorder, and rule out substance induced psychosis, and concluded that plaintiff "has had more lasting symptoms most consistent with the medically determinable impairments of antisocial personality disorder, depressive disorder and borderline intellectual functioning." (Id.)

/////

7

The ALJ's decision not to adopt LCSW Thurston's diagnosis of depressive disorder with psychotic features is also supported by Dr. Finkel's diagnosis of malingering and his impression that plaintiff was "making an obvious and poor attempt to appear psychotic." (Tr. at 197.) The ALJ relied on Dr. Finkel's opinion because,

> [n]otably, Dr. Finkel emphasized that the claimant obtained raw scores of zero on all subtests of the Wechsler Intelligence and Memory Scales, which is not credible and a heavy indicator of malingering (Exhibit 5F/2-3 [tr. at 196-97]). Dr. Finkel similarly noted that the claimant's reproduction of Bender designs showed obvious distortions and that the claimant was also unwilling to complete the Trails B test (Exhibit 5F/3 [tr. at 197]). While Dr. Finkel found that the claimant's thinking was logical and goal oriented without any indication of a thought disorder upon mental status examination, he noted that the claimant reported that he hears voices and sees things, including an imaginary friend, Tommy, who is always with him (Exhibit 5F/2 [tr. at 196]). In addition, when asked if he had a history of any kind of drug or alcohol problem, the claimant flatly denied any history of drug or alcohol abuse (Exhibit 5F/2 [tr. at 196]). Dr. Finkel correctly found this inconsistent with his parole records (Exhibit 5F/2 [tr. at 196]). Compellingly, based on his interview and examination, Dr. Finkel diagnosed the claimant with malingering at Axis I, and found that his functional abilities could not be accurately assessed due to malingering (Exhibit 5F/3 [tr. at 197]).

(Tr. at 26-27.)

For all of these reasons, the court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting LCSW Thurston's initial assessment of depressive disorder with psychotic features.

The court turns next to the records of plaintiff's treatment at Yolo County Alcohol, Drug and Mental Health Services from November 15, 2005 to June 14, 2006. (Tr. at 224-38.) MFTI Moore conducted a three-hour intake assessment of plaintiff on November 15, 2005, and Dr. Phillips signed the assessment on behalf of the treatment team on November 21, 2005. (Tr. at 233-38.) The ALJ discussed this assessment in detail.

> In an adult intake assessment completed on November 15, 2005, Ms. Judy Moore, MFTI, Yolo County Mental Health, evaluated the claimant, who reportedly was suffering from post-traumatic stress

| | |
|---|---|
| 1 | disorder, panic attaches [sic], depression, hearing voices, and fear of going out of the house (Exhibit 9F/10-15 [tr. at 233-38]). In this |
| 2 | assessment, the claimant reported that he lived in a violent environment in which he had a long criminal history of selling |
| 3 | drugs, guns and stealing (Exhibit 9F/10 [tr. at 233]). He also admitted to smoking marijuana 20 times a day for 15 years, but |
| 4 | none in the last three years, and injecting methamphetamines, for which he also quit some time ago (Exhibit 9F/10-11 [tr. at 233- |
| 5 | 34]). The claimant also recounted substantial post-traumatic stress from a break-in and shoot out in his home in 2001 that has led to |
| 6 | extreme paranoia and hearing voices (Exhibit 9F/11 [tr. at 234]). MFTI Moore reports that the claimant self-admitted himself for |
| 7 | evaluation to get help for his psychosis and panic attacks (Exhibit 9F/11 [tr. at 234]). Upon examination, MFTI Moore noted that the |
| 8 | claimant was incoherent and sometimes hard to follow, had circumstantial thought content with a varied rate of speech, labile |
| 9 | affect, fearful and paranoid mood, auditory and visual hallucinations, below average intellectual functioning, and |
| 10 | disturbed sleep with nightmares and flashbacks (Exhibit 9F/14 [tr. at 237]). MFTI Moore diagnosed the claimant with a litany of |
| 11 | mental health disorders, including chronic post-traumatic stress disorder, panic disorder with agoraphobia, psychiatric disorder, |
| 12 | NOS, amphetamine disorder in full remission and schizoid personality disorder at Axis II, antisocial personality disorder at |
| 13 | Axis II, and a low GAF score of 23 at Axis V (Exhibit 9F/13 [tr. at 236]). According to the DSM-IV, a GAF score of 23 is indicative |
| 14 | of behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, |
| 15 | or inability to function in almost all areas. |

(Tr. at 27.)

The ALJ contrasted MFTI Moore's assessment with detailed progress notes just fifteen days later in which the treating source evaluated plaintiff for an hour and found him significantly improved following compliance with medication. (Tr. at 27-28, citing Exhibit 9F/6-9 [tr. at 229-32].) Although there is no full signature on the November 30, 2005 assessment, the initials on the fourth page appear to be those of Aileen Florento, M.D. (See tr. at 224-28.) The ALJ observed that plaintiff complained of hearing voices, but "the case worker astutely noted that the claimant did not appear to be internally pre-occupied, and questioned his behavior in terms of possible malingering." (Tr. at 27, citing Exhibit 9F/6-9 [tr. at 229-32].) The case worker diagnosed plaintiff at Axis I with polysubstance dependence in remission according to plaintiff, rule out psychotic disorder, and rule out malingering. At Axis II, she diagnosed

antisocial personality disorder. She determined a GAF score of 55-60 at Axis V, indicative of only moderate symptoms of difficulty in social, occupational, or school functioning. (Tr. at 27-28.)

The remaining treatment records from the county agency consist of Dr. Florento's progress notes and a one-page medication log. (Tr. at 224-228.) When Dr. Florento saw plaintiff on January 11, 2006, her impressions were history of substance use, mood dysregulation, rule out psychosis, and rule out malingering. (Tr. at 226-27.) When she saw plaintiff on March 8, 2006, she noted that plaintiff admitted recent alcohol and drug use and that his recent drug test had come back positive; her impressions were antisocial personality disorder, drug abuse, history of polysubstance dependence, and rule out substance induced psychosis. (Tr. at 225.)

The ALJ did not fail to take into account MFTI Moore's intake assessment. Rather, the ALJ found that subsequent progress notes demonstrated stabilization and improvement in plaintiff's mental health condition. (Tr. at 28.) In reaching this conclusion, the ALJ took into consideration plaintiff's function report, the third-party function report by his mother, and the testimony given by plaintiff and his mother at the hearing. (Id.) The court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting MFTI Moore's intake assessment of chronic post-traumatic stress disorder, psychiatric disorder not otherwise specified, and schizoid and antisocial personality disorders.

Finally, the medication log shows medications prescribed or authorized by Dr. Florento, with three log entries initialed by Robert Hunt. (Tr. at 224.) Although there is no evidence that Nurse Practitioner Hunt treated plaintiff, he completed a medical source statement form on September 14, 2006, rating plaintiff unable to usefully perform or sustain activity in the areas of ability to work without supervision and ability to interact with the public, coworkers, and supervisors. (Tr. at 239-40.) Nurse Practitioner Hunt did not support his assessments with citations to medical finding, as required by the form, and opined without explanation that plaintiff's prognosis was "guarded." (Id.) The ALJ gave no probative weight to Nurse

Practitioner Hunt's opinion because he found that the opinion was not supported by medical findings, it appeared to be greatly influenced by plaintiff's self-reports of hallucinations and psychosis, and there were no corresponding records to corroborate Nurse Practitioner Hunt's status as a treating physician. (Tr. at 28-29.)

The court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for giving no probative weight to the conclusory opinion of Nurse Practitioner Hunt. See Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

## CONCLUSION

Plaintiff has not demonstrated that the ALJ failed to take into account the opinions and treatment records of medical sources Thurston, Moore, Phillips, and Hunt with respect to plaintiff's post-traumatic stress disorder, borderline intellectual functioning, and depression with psychotic features.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's April 8, 2008 motion for summary judgment (Doc. No. 22) is denied;

2. Defendant's May 30, 2008 cross-motion for summary judgment (Doc. No. 25) is granted; and

3. The decision of the Commissioner is affirmed.

DATED: May 19, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/sandoval1201.order

11